UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                           |   |                      |
|-------------------------------------------|---|----------------------|
| MAURICE CIVITARESE,                       ) |                      |
|     Petitioner,       ) |                      |
|                                           ) |                      |
| v.                                        ) | Civil Action No.     |
|                                           ) | 16-40129-TSH         |
| COLETTE GOGUEN, Superintendent            ) |                      |
| NCCI-GARDNER,                             ) |                      |
|     Respondent.       ) |                      |

## MEMORANDUM OF DECISION AND ORDER
September 30, 2019

**HILLMAN, D.J.**

### Background

Maurice Civitarese ("Civitarese" or "Petitioner") has filed a Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (Docket No. 1)("Petition") against Colette Gardner, Superintendent, NCCI-Gardner[1] ("Respondent"). Petitioner was convicted in Massachusetts Superior Court of rape of a child by force (four counts), indecent assault and battery on a person 14 years old or older (one count), assault with intent to rape a child (one count), indecent assault and battery of a person under 14 (four counts), and open and gross lewdness (one count). He was sentenced to 17-25 years. Petitioner filed a post-trial motion

---

[1] Petitioner named as Respondent Raymond Marchilli who was the Superintendent of NCCI-Gardner at the time he filed his Petition. Pursuant to Fed.R.Civ.P. 25(d), Colette Goguen, the current Superintendent of NCCI-Gardner, is automatically substituted as Respondent.

for new trial under Mass.R.Crim.P 30(b)("Rule 30(b) Motion"), which was denied. The Massachusetts Appeals Court ("MAC") consolidated his direct appeal and his appeal from the denial of his Rule 30(b) motion. The MAC affirmed his convictions and the denial of his motion for new trial. The Supreme Judicial Court of Massachusetts ("SJC") denied his application for further appellate review ("ALOFAR"). He then filed his timely Petition in this Court asserting the following grounds for relief:

> **Ground One**: Petitioner was denied his Sixth Amendment Right to effective assistance of counsel because his lawyer stated in his opening statement that the victims had been assaulted by other individuals, but had no admissible evidence so support this contention. Petitioner was prejudiced by counsel's statement because it effectively conceded that the victims had been sexually assaulted and shifted the burden to Petitioner to identify the culprits.
>
> **Ground Two**: The trial court deprived him of his constitutional right to testify in his own behalf because his lawyer's advice that he not testify was inadequate, that is, such advice constituted ineffective assistance of counsel. More specifically, his lawyer did not prepare him to testify and convinced him not to do so first, because the jury would learn of his prior record, and second, because the judge would impose a longer sentence if he were convicted and the judge believed he testified falsely. This advice was erroneous.

Civitarese has exhausted state-court remedies with respect to both grounds for relief. For the following reasons, the Petition is *denied*.

## **Facts**[2]

### The Underlying Crimes

The evidence presented at trial was that Civitarese sexually assaulted and raped two young girls, K and S, while he was the live-in boyfriend of K's mother and served as K's and her

---

[2] The following factual summary of the underlying crimes and the summary of the MAC decision *infra*, are taken from the decision of the MAC affirming Civitarese's convictions. *See Commonwealth v. Civitarese*, 88 Mass.App.Ct. 1103, 36 N.E.3d 79 (2015). I will include additional facts as necessary in my discussion of Petitioner's claims for relief.

siblings' primary caretaker while K's mother was working. S was a friend of the family who had first met K's mother when she was 11 years old. S, who had a "brother/sister relationship" with K and her siblings, spent many weekends at K's family's home, and would often "sleep over." Civitarese's abuse of K started when she was six or seven years old and ended when she was approximately thirteen. It usually occurred when her mother was at work and her brothers were playing outside or playing video games in their room. S was approximately twelve or thirteen when the defendant assaulted her. Both victims were sexually assaulted in the family home, in either K's bedroom or the bedroom Civitarese shared with K's mother. Essentially, the assaults included touching and fondling of genitals; K was forced to perform oral sex on Civitarese; digital penetration of both girls; and penile penetration of S. Civitarese told K to keep what they were doing a secret, and said that if she told she "would get taken away again" from her mother.[3] Civitarese told S, during the rapes, that he loved her, and not to tell K's mother because she "would get mad." K's abuse stopped when Civitarese moved out of the family home after a break-up with K's mother; S's abuse stopped after Civitarese raped her and she stopped sleeping at the family's home.

### Post-Trial Proceedings

On June 21, 2012, Civitarese filed a direct appeal from his conviction to the MAC.[4] On October 7, 2013, Civitarese filed his Rule 30(b) Motion asserting two claims for relief: (1) his lawyer rendered constitutionally ineffective assistance of counsel by making a promise in his opening statement that other people committed the crimes charged, but then never attempted to

---

[3] K's mother had lost custody of all her three children for a period and they lived with their father during that time. They were later returned to her.

[4] Civitarese has not raised in his Petition any of the claims raised in his direct appeal.

introduce such evidence at trial; and (2) Civitarese's decision not to testify was not voluntary and knowing because his lawyer erroneously advised him that if he testified at trial, the jury would learn of his prior drug convictions and if the trial judge found he gave false testimony, could punish him by giving him a harsher sentence; Civitarese relied on this erroneous advice in deciding not to testify. The MAC stayed Civitarese's appeal pending disposition of his motion for new trial.

In support of his Rule 30(b) Motion, Civitarese contended that his lawyer made the third-party culprit evidence the centerpiece of his defense. More specifically, trial counsel had become aware (from Civitarese) that K's mother had been sexually abused years before by her brother Victor, and that K saw her Uncle Victor at family gatherings at a campground in New Hampshire. His lawyer also learned that when she was 15, S had started dating a much older man who she later married. Civitarese's lawyer theorized that K and S had blamed Civitarese for the sexual assaults to protect in K's case, her Uncle Victor, and in S's case, her boyfriend. He did not file a motion in limine seeking advance approval from the judge to explore this theory because he was afraid the judge would rule that such evidence would not be admissible. He therefore raised the issue in his opening statement by communicating to the jury that during the trial, he would produce evidence of "the third-party culprits." The Commonwealth objected on relevancy grounds. The trial judge determined that he could not determine relevancy at that time, but cautioned Civitarese's lawyer about making promises to jurors that remain unfulfilled. Civitarese's lawyer went on to tell the jurors that K's mother and aunt Theresa had ben both been sexually abused by Uncle Victor who K came into contact regularly. He told the jury that K's mother would testify about the abuse and the similarities with the abuse K suffered. He further

4

told the jury that S. had been bragging to other people that she had started dating somebody 18 years older than her when she was 15, that she saw this man during the "time period" and she later married him. However, at trial, the jury never heard any evidence that Uncle Victor had sexually assaulted K's mother. As to his claim that he did not make a knowing and voluntary waiver of his right to testify on his own behalf, Civitarese asserted that his lawyer advised him that he had a right to testify and that the decision was ultimately his to make. At the same time, his lawyer advised him that he did not think Civitarese would make a good witness because he was nervous and emotional and would go off on "digressions." He also warned Civitarese that his testimony would be problematic because the jury would likely hear about his prior convictions and because judge's sometimes give defendants harsher sentences if they believe they lied on the stand. On the last day of trial, Civitarese remained undecided—his wife and other family members had urged him to testify, but his lawyer urged him not to do so. Based on his lawyer's advice, he decided not to testify. When asked by the trial judge in a colloquy regarding his right to testify, Civitarese stated that he understood he had "an absolute right to testify or not to testify," and informed the judge he did not wish to testify. After holding an evidentiary hearing, the trial judge denied the Rule 30(b) Motion.

As to Civitarese's claim that he received ineffective assistance of counsel because his lawyer indicated in his opening statement that he would present third-party culprit evidence the trial judge made the following specific findings of fact and conclusions of law[5]:

    1.    Civitarese's lawyer was an experienced criminal attorney who had tried over 200 criminal cases. He settled on three possible defense strategies: (a)

---

[5] The trial judge's findings of fact and conclusions of law are set forth in *Commonwealth v. Civitarese*, Sup.Ct.Crim.Act. No. 2011-197 (Mass.Sup.Ct. Jan. 14, 2014)(unpublished opinion) attached as *Ex. 4* to *Supp. Answer Vo. I* (Docket No. 17).

5

due to the families' living situation which involved multiple moves and separation of the family members, Civitarese had limited contact with the victims; (b) K had frequent contact with a Department of Social Services (now Department of Children and Families) social worker, a school counselor, teachers and family members to whom she never disclosed that she had been sexually abused by Civitarese, and (c) the third-party culprit defense[6].

2. Civitarese's lawyer attempted to raise the third-party culprit defense in his opening statement. The Commonwealth objected and the objection was overruled.[7] Both K and her mother testified at trial about K's contacts with Uncle Victor. Both testified that K attended family gatherings with Uncle Victor in New Hampshire and that K was never alone with him. Because there was no evidence that K had been alone with Uncle Victor, the trial judge concluded that the sexual abuse of K's mother and aunt, which had occurred many years before, was not relevant and refused to allow the defense to pursue this line of inquiry.

3. It would have been better if Civitarese's lawyer had filed a motion in limine to test the admissibility of the third-party culprit theory before mentioning it in his opening statement. At the same time, Civitarese's lawyer's duty "was to represent his client zealously and according to his best judgment." Civitarese's lawyer did not file a motion in limine because he wanted to preserve the advantage of surprise and because he felt that the judge would be more receptive to admitting the evidence once a foundation had been laid.

4. Civitarese's lawyer took a calculated risk—to raise the issue in a motion in limine would have likely resulted in his being barred from mentioning the third-party culprit theory in his opening statement. In his judgment that would have forfeited an important advantage of planting reasonable doubt in the jury's mind. Moreover, although Civitarese's lawyer mentioned K's abuse by Uncle Victor in his opening statement, he did not dwell on it and intentionally refrained from promising specific testimony from a particular witness, less the evidence be excluded.

5. The judge cited to SJC caselaw governing a lawyer's failure to deliver evidence after promising to do so in his opening statement: such conduct does not automatically constitute ineffective assistance of counsel, rather the court must look to whether such conduct reflected inadequate preparation, incompetency or

---

[6] The trial judge substantially agreed with Civitarese's version of how this proposed defense came about, and the substance of the proposed defense.

[7] In his opinion, the trial judge stated that "In hindsight, it seems clear that it would have been better for all concerned had I sustained the objection, while leaving open the possibility of allowing the evidence in the mother's cross examination if it appeared admissible in light of whatever context had by then been developed."

inattention, and whether the subsequent failure to produce the evidence was a decision forced upon the lawyer over which he had no control, or was otherwise supported by "strategic justifications." *Commonwealth v. McMahon*, 443 Mass. 409, 425 (2005)(citations omitted). The judge concluded that while in hindsight the lawyer's judgment was vulnerable to criticism, his reasons for proceeding as he did were well founded and that his failure to "deliver" on the "promise" made in his opening statement did not result from incompetence, lack of preparation or inattention, but rather from a ruling by the court. The lawyer could not have known at the time he made the remarks in his opening statement that he would not be able to lay a sufficient foundation to pursue the line of inquiry at trial. Moreover, the other two line of defenses were left intact and were presented thoroughly and capably.

      6. The trial judge determined that Civitarese's lawyer took a strategic risk that did not pay out, but whose likely damage to the defense was minimal at worst. Thus, he concluded that Civitarese's lawyer's judgment on the matter did not fall below the standard of the average fallible attorney and mention of the issue in his opening statement likely did not damage his chance on other, more viable theories of defense. The trial judge again cited to *McMahon* in which the SJC quoted *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052 (1984), the seminal Supreme Court case on ineffective assistance of counsel:

> There is, in any opening statement, a risk that promised evidence will not materialize. The decision whether to make an opening statement, and, if so, what details to include in that statement, are purely strategic, and the strategic benefit of announcing specific anticipated testimony in the opening statement may outweigh the risk that the testimony will not be available. '[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengable.'

As to Civitarese's claim regarding his decision not to testify, the trial judge made the following findings of fact and conclusions of law:

      1.     From the start of his representation of Civitarese, his lawyer thought he would make a problematic witness because he appeared nervous and distractible tending to ramble and stray from the questions asked.

      2.     Civitarese's lawyer was concerned about two issues he feared might come up were he to testify. K's and S's mothers had met when both were visiting a correctional facility at which Civitarese was incarcerated. In addition to being incarcerated, Civitarese also had substance abuse issues for which he

7

received in patient treatment while he knew K's family. That Civitarese did not have access to K during the relevant time period was one aspect of the defense's strategy. Civitarese's lawyer was understandably concerned that evidence of his client's drug use would be damaging to his case and that a detailed account by Civitarese of his whereabouts and his contact and relationship with the family might stray into both areas (his prior convictions and drug abuse).

3. Civitarese's lawyer filed motions in limine to address the admissibility of his convictions and drug use. The Commonwealth indicated that it did not intend to introduce evidence of Civitarese's prior convictions either directly or through witnesses. Nevertheless, his lawyer was concerned that Civitarese's inability to stay on point would inadvertently result in such evidence coming in either on direct or cross examination.

4. Civitarese contended at the hearing that his lawyer told him that if he testified, he could be impeached with his prior convictions, which was erroneous. The trial judge rejected Civitarese's testimony and instead found that his lawyer only expressed his concern that if Civitarese testified, he would say something that would open the door to this evidence coming in.

5. Civitarese lawyer expressed concern to him that if he testified and that later the judge believed he had lied, he might get a harsher sentence because the judge would believe he failed to take responsibility and had perjured himself. Civitarese's lawyer knew a judge could not lawfully do this but did not remember if he explained that to Civitarese. Civitarese's lawyer believed that judge's sometimes do impose harsher sentences for these reasons without saying so and that it is a risk a defendant runs if he testifies. Thus, he so advised hid client.

6. Civitarese admitted that he tends to ramble, and the judge observed that this was true to some extent during the hearing but did not find he rambled much. He also found that given the nature of the charges, Civitarese would be more inclined to ramble at trial. The judge, therefore, credited the lawyer's testimony that Civitarese was nervous and distractible during the trial and the months leading up to it. He further found that the lawyer had a genuine and reasonable concern about Civitarese's ability to remain on point, make a good impression, and "avoid dangerous shoal waters" had he testified at trial. The judge also noted that he recalled Civitarese looking very nervous during the trial; he appeared much more relaxed during the hearing.

7. The judge found troubling Civitarese's lawyer's advice that he could receive a harsher sentence if he testified because Massachusetts law makes clear that judges cannot do so, he personally never does so and does not feel his colleagues do so. At the same time, he recognized it would be naïve to suggest

8

that judges are perceived by the bar as they perceive themselves. The judge also noted that in a matter as discretionary as sentencing, reasonable minds could differ as to whether a sentence, particularly a harsh one, could be the product, even unconsciously, of illicit unspoken concerns. Thus, he concluded that while Civitarese's lawyer's advice on this subject was more cautious than necessary, he concluded it did not fall below the level of the average fallible defense attorney, nor did he find it particularly significant standing next to the other concerns he had and shared with Civitarese.

8. Despite voicing his concerns, Civitarese's lawyer continued to prepare him to testify throughout the trial—giving him pointers were he to take the stand and giving him limited practice with direct examination. He did not thoroughly prepare Civitarese, but what he did further convinced him that Civitarese would not make a good witness.

9. Civitarese's lawyer told him that he needed to know whether he intended to testify by the next to last day of trial (in order to properly prepare him if he chose to do so). Civitarese had multiple conversations with his lawyer—in person and by telephone—prior to making his decision. During each conversation, his lawyer advised him not to testify. If Civitarese did not take his advice (he believed he would), he intended to get him off the stand as soon as possible so there would be minimal damage. Civitarese's wife and other family members were encouraging him to testify. Ultimately, Civitarese decided, based on his lawyer's advice, not to testify. The judge did not consider, because he found it not credible, Civitarese's testimony at the hearing that he telephoned his lawyer while on the way to the courthouse the morning of the last day of trial and was told he didn't have to testify because his lawyer had uncovered "other information" that obviated the need for his testimony.

10. The judge was advised of Civitarese's decision to not to testify after the Commonwealth rested its case. The judge excused the jury and engaged in a colloquy with Civitarese during which the trial judge explained in detail Civitarese's right to testify. Civitarese confirmed that he did not want to testify.

11. The judge citing a Massachusetts case, determined that Civitarese must prove by a preponderance of the evidence that but for his counsel's erroneous advice, he would have testified in his own defense. He concluded that Civitarese's waiver was fully knowing and voluntary. In making this finding he noted that that the evidence produced at the hearing gave him little reason to concluded otherwise. In support of this finding, the judge noted that Civitarese's testimony that his lawyer told him he could be impeached with his prior convictions was not credible. He found that it was reasonable for his lawyer to advise him that he would make a poor witness and that testifying could open the

door to evidence concerning his prior incarceration and drug rehabilitation. Moreover, his lawyer's further suggestion that he could be sentenced more harshly if he testified while not legally accurate, reflects the lawyer's suspicion that it happens. In any event, the primary reason he advised him not to testify was Civitarese's demeanor and tendency to stray off topic and the judge did not believe that the advice concerning a potential harsher sentence played a significant—let alone, outcome determinative-role in the defendant's decision not to testify. Thus, Civitarese had failed to show that his waiver of his right to testify was not knowing and voluntary, or that the advice he received from his lawyer fell below the standard of the average fallible attorney.

Civitarese appealed the judge's denial of his motion for new trial. The MAC consolidated Civitarese's direct appeal with his appeal of is motion for new trial. Civitarese sought review of both claims raised on his Rule 30(b) Motion. The MAC made the following findings in denying his appeal:

> (1) *Ineffective assistance counsel- making an unfulfilled promise in opening statement*. The MAC affirmed for essentially the reasons set forth in the trial judge's denial of Civitarese's Rule 30(b) Motion. First, the MAC recapped the trial judge's primary findings. The MAC agreed with the trial judge that as to his comments regarding Uncle Victor as a potential third-party culprit, the lawyer "did not dwell on it, and he intentionally refrained from promising specific testimony from a particular witness, lest the evidence be excluded." The MAC further noted that the judge found that as a strategic maneuver, defense counsel had not filed, prior to trial, a motion in limine regarding the third-party culprit defense as he wanted to "preserve the advantage of surprise," and because he believed the judge would be more receptive to the defense after counsel had more fully developed the supporting evidence. The MAC also cited to the trial judge's finding that "[T]rial counsel's failure to produce evidence to which counsel alludes in an opening statement [does not] constitute[ ], in and of itself, ineffective assistance of counsel in all cases." ... To succeed, the defendant must show "that defense counsel's failure to produce important evidence promised in opening statements was 'behavior ... falling measurably below that which might be expected from an ordinary fallible lawyer,' and deprived the defendant 'of an otherwise available, substantial ground of defense.' *Commonwealth v. Saferian,* 366 Mass. 89, 96 (1974)." The MAC then made the following specific legal conclusions and findings:
>
>> Our analysis focuses upon factors including the nature and extent of the promise, any strategic justifications,

and the impact on the jury when the promised evidence was not produced. 'There is, in any opening statement, a risk that promised evidence will not materialize. The decision whether to make an opening statement, and, if so, what details to include in that statement, are purely strategic, and the strategic benefit of announcing specific anticipated testimony in the opening statement may outweigh the risk that the testimony will not be available. 'Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.' *Commonwealth v. McMahon,* 443 Mass. 409, 425 (2005), quoting from *Strickland v. Washington,* 466 U.S. 668, 690 (1984).

Here, we cannot say the defendant has shown that the judge abused his discretion or that counsel's actions were both substandard and prejudicial. Compare *Commonwealth v. Jenkins,* 458 Mass. 791, 810 n. 16 (2011) ("The defendant asserts that he was prejudiced by his counsel's promise that he would present evidence of a third-party culprit in his opening statement. That evidence promised in an opening statement does not materialize does not necessarily amount to ineffective assistance.... In any event, trial counsel did not state that the evidence would be forthcoming, but carefully presented the theory as a possibility"). We observe that the prosecutor did not mention in his closing argument the lack of evidence relating to the uncle or 'otherwise attempt to profit from defense counsel's opening promise.' Finally, as the judge found, 'although the defendant was not able to pursue his third-party culprit theory, the ... other principal lines of defense—limited access, belated disclosure, and the inference that no sexual abuse had occurred—were left fully intact and were presented thoroughly and capably.'

(2) *Ineffective Assistance of Counsel-- The Decision not to testify.* The MAC stated that for a defendant to succeed on a claim that counsel was ineffective in advising him not to testify, the defendant must "prove, by a preponderance of the evidence, that, but for his Counsel's erroneous advice ... he would have testified in his own defense." The MAC noted that the judge credited Civitarese's lawyer's testimony at the Rule 30(b)(6) Motion hearing that he had been concerned that the defendant would make a problematic witness; during many interactions with the defendant prior to trial, counsel had observed that the defendant appeared nervous and distractible, tending to ramble and to stray from questions posed. In addition, K's mother and S's mother had first met when visiting a correctional facility where the defendant was incarcerated, and the defendant had been unavailable for

some part of the time period when the offenses occurred because he was undergoing drug rehabilitation. Even though in response to a pretrial motion in limine the judge had excluded evidence of both of those circumstances, counsel, as the judge found, "had a genuine and reasonable concern about his client's ability to make a good impression, stay on point, and avoid dangerous shoal waters had he testified at trial." Accepting counsel's advice, the defendant informed the judge at trial of his decision not to testify; the judge then explained to the defendant that it was his choice, and that he had "an absolute right either to testify or not to testify." The defendant reiterated that it was his choice not to testify.

The MAC found no error in the judge's conclusion that "the defendant has not shown that his waiver of his right to testify was unknowing or involuntary, or that the advice he received from his counsel on the subject fell below the standard of the average fallible attorney." The MAC also discerned no error in the judge's determination that the "sentencing issue" (*i.e.*, counsel's advice concerning a risk of harsher punishment on the charged crimes if the defendant testified and the judge felt he perjured himself), when "[w]eighed alongside" the advice regarding the incarceration and drug rehabilitation evidence, did not "play[ ] a significant—let alone, outcome—determinative-role in the defendant's decision not to testify."

Civitarese filed an ALOFAR in which he raised among other grounds for relief that he received ineffective assistance of counsel: (1) based on his lawyer making an unfulfilled promise in his opening statement; and (2) his lawyer gave him erroneous advice which he relied on in deciding not to testify, thus depriving him of that right. On October 30, 2015, the SJC denied his ALOFAR.

## Standard of Review

The standard of review for habeas corpus petitions brought by state prisoners is set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Under the AEDPA:

> a federal court may grant habeas relief if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." This means we look to the Supreme Court's holdings, as opposed to dicta,

at the time the state court rendered its decision, while employing the following criteria.

> An adjudication will be contrary to clearly established law if the state court 'applies a rule that contradicts the governing law set forth' by the Supreme Court or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'". On the other hand, a state court adjudication constitutes an unreasonable application "if the state court identifies the correct governing legal principle from the Supreme Court's then-current decisions but unreasonably applies that principle to the facts of the prisoner's case." An "*unreasonable* application of federal law is different from an *incorrect* application of federal law,'" and a state court is afforded deference and latitude.
>
> The second scenario justifying habeas relief is if the state court adjudication led to "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Though this means that a federal court will be taking a closer look at a state court's findings of fact, the fundamental principle of deference to those findings still applies.
>
> A 'state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.'

*Hensley v. Roden*, 755 F.3d 724, 730-31 (1st Cir. 2014)(internal citations and citations to quoted authorities omitted)(emphasis and alterations in original). In administering these standards, the state court's factual findings are presumed to be correct, and they can be overcome only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## **Discussion**

Civitarese asserts that he received ineffective assistance of counsel in violation of the Sixth Amendment as the result of his lawyer making an unfulfilled promise in his opening statement and by giving him erroneous legal advice upon which he relied in making his decision not to testify. Civitarese asserts that he is entitled to habeas relief because "the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of,

13

clearly established federal law as determined by the Supreme Court of the United State; or resulted a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Mem. Of L. In Supp. Of Pet. For Habeas Corpus* (Docket No. 25), at p. 6 (citing 28 U.S.C. §2254(d)).

<u>Applying *Strickland* Under the AEDAP</u>

The clearly established federal law relating to ineffective assistance of counsel claims is based on *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* established that the Sixth and Fourteenth Amendments to the United States Constitution entitle a defendant to the effective assistance of counsel in all state criminal prosecutions which may result in the loss of his liberty. Of course, to establish constitutionally ineffective assistance of counsel as a ground for federal habeas relief, the petitioner bears a doubly heavy burden. On direct appeal, to demonstrate ineffective assistance under *Strickland,* [the defendant] must show: (1) deficient performance by counsel (2) resulting in prejudice. In this context, 'deficient' does not mean merely lacking or wanting; it requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Likewise, prejudice cannot be proved by any small quantum; it requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

But even this exacting demonstration is not enough in a habeas proceeding. Under AEDPA, [t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard, which is the question we would ask if the claim came to us on direct review of a criminal conviction in a United States district court. In addition, AEDPA sets out a separate and demanding standard applicable to review of a state court's factual findings. The state court's factual findings are 'presumed to be correct' unless the petitioner can rebut this 'presumption of correctness' with 'clear and convincing evidence.'

An ineffective assistance of counsel claim … is a mixed question of law and fact and should therefore be reviewed under the "unreasonable application" clause of § 2254(d)(1).

*Shuman v. Spencer*, 636 F.3d 24, 31 (1st Cir. 2011)(internal citations, citations to quoted cases and quotation marks omitted).

Civitarese recognizes that he must prove that the MAC's decision was an unreasonable application of clearly established federal law determined by the Supreme Court and that the court based its decision on an unreasonable determination of the facts. Civitarese first sets forth a statement of facts citing to record evidence from the trial and evidentiary hearing. However, he makes no attempt to dispute the findings of fact made by the MAC, which adopted substantially all the findings of fact made by the trial judge or explain how his asserted facts differ therefrom. Accordingly, I find that he has failed to rebut by clear and convincing evidence the presumption that the state court's findings of fact are correct. Civitarese argues that the state court's ruling violated AEDPA's standards and therefore, must be overturned. However, he does not specify how the state court's application of *Strickland* was unreasonable with respect to his first ground for relief relating to his lawyer's mention of third-party culprits in his opening statement. He also provides no specifics as to how the court's findings regarding his second ground for relief, that his waiver of his right to testify was not knowing and voluntary because of his lawyer's erroneous advice, was violative of *Strickland* or was a decision that was otherwise contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented. Nevertheless, I will do an independent review of the state court's decision applying the deferential standard required under the AEDPA.

## Whether Civitarese Has Established He Is Entitled To Habeas Relief

Civitarese is entitled to relief on his ineffective assistance of counsel claims only if he establishes both that his lawyer provided deficient assistance and that there was prejudice as a result. Under the standards required by the AEDPA, this is a daunting proposition.

> To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness. A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.
>
> With respect to prejudice, a challenger must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
>
> Surmounting Strickland's high bar is never an easy task … The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so… The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.
> ….

> In assessing prejudice under *Strickland,* the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different. This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' The likelihood of a different result must be substantial, not just conceivable.

*Harrington v. Richter,* 562 U.S. 86, 105, 111-12, 131 S. Ct. 770 (2011))(internal citations, citations to quoted cases and quotation marks omitted). Furthermore, under *Strickland,* "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690-91, 104 S.Ct. 2052.

### *Ground One--Making an Unfulfilled Promise in Opening Statement*

Civitarese claims that his lawyer was ineffective for including in his opening statement an allegation about a possible third-party culprit but then failing to present any such evidence to the jury. However, as summarized above, the MAC applied the two-prong analysis mandated by *Strickland* and reasonably rejected Civitarese's claim of ineffective assistance of counsel as it related to his trial lawyer's opening statement. Additionally, based on the facts found by the trial judge and adopted by the MAC it was not unreasonable for the MAC to conclude that Civitarese received effective assistance of counsel. Therefore, Civitarese is not entitled to habeas relief on this claim.

### Ground Two—The Decision not to Testify

Civitarese asserts that he was denied his right to testify in his own defense because his lawyer's advice not to testify was constitutionally inadequate. More specifically, he asserts that his lawyer told him that if he testified his prior conviction could be used to impeach him and that

17

if the judge believed he lied on the stand, he might impose a harsher sentence. He contends that this advice was erroneous because his prior conviction would not have been admissible and, in fact, had been excluded by the trial judge and Massachusetts law prevented the trial judge form giving him a harsher sentence based on his testimony. As summarized above, the MAC credited the trial judge's findings that his lawyer did not tell him that his conviction was admissible, rather the told him that he would not make a good witness and for that reason, his responses could open the door to the admission of evidence about his prior drug convictions and rehabilitation. The MAC further found that Civitarese's lawyer told him that the judge may impose a harsher sentence if he testified. However, the MAC agreed with the trial judge that this advice did not play a significant role in Civitarese's decision not to testify. Given that Civitarese did not refute the state court's factual findings, this conclusion is unassailable on habeas review. Ultimately, the MAC agreed with the trial judge's conclusion that his lawyer's primary concern was Civitarese's inability to stay on point and make a good impression. Based on its reasonable findings, the MAC properly applied *Strickland* and affirmed the trial judge's finding that Civitarese's waiver of the right to testify was knowing and voluntary and that is lawyer's advice did not render his representation inadequate. Because the state court's decision was not an unreasonable application of *Strickland*, Civitarese is not entitled to habeas relief on this claim.

## **Conclusion**

For the foregoing reasons, the Petition Under 28 U.S.C. § 2254 For Writ OF Habeas Corpus By A Person In State Custody (Docket No. 1), is ***denied***.

**Certificate of Appealability**

The statute governing appeals of final orders in habeas corpus proceedings provides that an appeal is not permitted "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a "substantial showing," a petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595 (2000) (internal quotation marks omitted). This is a low bar; a claim can be considered "debatable" even if every reasonable jurist would agree that the petitioner will not prevail. *Miller-El v. Cockrell*, 537 U.S. 322, 338, 123 S.Ct. 1029 (2003). In ruling on an application for a certificate of appealability, a district court must indicate which specific issues satisfy the "substantial showing" standard. 28 U.S.C. § 2253(c)(3).

I grant the certificate of appealability with respect to Ground One of the Petition, *i.e.,* Petitioner's claim that he was denied effective assistance of counsel as the result of his lawyer making an unfulfilled promise in his opening statement. I do so because although I have rejected Petitioner's legal arguments regarding this claim, he has made a substantial showing of the denial of a constitutional right. Moreover, reasonable jurists could disagree with my conclusion. I also find that or that the issues presented were adequate to deserve encouragement to proceed further. Therefore, issuance of a certificate of appealability as to this claim is appropriate. I deny the certificate of appealability with respect to Ground Two of the Petition *i.e.*, Petitioner's claim that his refusal to testify was based on inadequate advice from his lawyer I do not find that

reasonable jurists could debate whether this claim should be resolved in a different manner or that there is any basis to proceed further with the issues he has presented.

**So Ordered.**

/s/ *Timothy S. Hillman*
TIMOTHY HILLMAN
DISTRICT JUDGE